# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

UNITED STATES OF AMERICA

v.  Criminal No. 2:15-cr-00059

GARY BRIAN ADAMS

## DEFENDANT'S SENTENCING MEMORANDUM & MOTION FOR VARIANCE SENTENCE

Gary Adams is a 35-year-old, divorced father of a 9-year-old daughter. He was born in Logan County, West Virginia. Except for the one year he lived in Georgia when he was 21, he has lived most of his life in Logan County, West Virginia. He completed at least half of the ninth grade at Chapmanville High School; he obtained his GED in 2005.

Mr. Adams' parents were married when he was born and then divorced when he was seven. Afterward, while he regularly saw both of his parents - Mr. Adams was basically raised by his paternal grandmother, Goldie Adams. He has a younger brother, Jeremy, who resides in his grandmother's home with his uncle, Steve Adams, in Chapmanville. Gary divorced from his first marriage in 2009; this was the same year he began his relationship with Cheryl Vance. Gary and Cheryl have now been together for six years; Cheryl has no criminal history, has younger children, and works for a company doing periodic inventories for retailers, like grocery stores. Upon his release, Mr. Adams intends to resume living with Ms. Vance at his grandmother's home in Chapmanville.

Mr. Adams has pled guilty to unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). By virtue of his plea, once adjudged convicted Mr. Adams is

exposed to up to 10 years of imprisonment, a fine, or both. 18 U.S.C. § 924(a)(2). Because Gary's offense of conviction is a Class C felony, *see* 18 U.S.C. § 3559(a)(3), he can be separately sentenced to a term of supervised release (following any term of imprisonment) for not more than three years. 18 U.S.C. § 3583(b)(2). He is alternately eligible for a statutory term of probation of at least 1, but no more than 5 years. 18 U.S.C. § 3561 (a) & (c)(1). He can also be fined and will be charged a $ 100 mandatory special assessment. *See* 18 U.S.C. § 3013. Mr. Adams does not have the means to pay any fine, and has already been required to forfeit any interest he had in three valuable firearms - such that no fine should be imposed in this matter. While perhaps technically eligible to pay restitution due to his offense of conviction, there are no identifiable victims and no restitution order should issue.

The US Probation Office has concluded that Mr. Adams is subject to an advisory guideline range of 57 to 71 months of imprisonment. Defendant submits that this overstates the seriousness of what is essentially a status offense, particularly when his offense conduct involved no violence or credible threats of violence. Defendant separately feels it is important that he has been complicit since being first confronted by law enforcement officials over two years ago. He immediately admitted to being a felon and possessing firearms, and then he turned the three at issue in this case over to officers. Over a year later he made further inculpatory statements to authorities. Once he was finally arrested and formally charged, he waived his right to any bond hearing; he sat through a further debriefing with authorities, and then entered his guilty plea without filing any pretrial motions or otherwise exercising his right to go to trial. Taken as a whole, therefore, defendant submits that a below guidelines range sentence would be sufficient, but no more than necessary to address the sentencing factors under 18 U.S.C. § 3553(a).

exposed to up to 10 years of imprisonment, a fine, or both. 18 U.S.C. § 924(a)(2). Because Gary's offense of conviction is a Class C felony, *see* 18 U.S.C. § 3559(a)(3), he can be separately sentenced to a term of supervised release (following any term of imprisonment) for not more than three years. 18 U.S.C. § 3583(b)(2). He is alternately eligible for a statutory term of probation of at least 1, but no more than 5 years. 18 U.S.C. § 3561 (a) & (c)(1). He can also be fined and will be charged a $ 100 mandatory special assessment. *See* 18 U.S.C. § 3013. Mr. Adams does not have the means to pay any fine, and has already been required to forfeit any interest he had in three valuable firearms - such that no fine should be imposed in this matter. While perhaps technically eligible to pay restitution due to his offense of conviction, there are no identifiable victims and no restitution order should issue.

The US Probation Office has concluded that Mr. Adams is subject to an advisory guideline range of 57 to 71 months of imprisonment. Defendant submits that this overstates the seriousness of what is essentially a status offense, particularly when his offense conduct involved no violence or credible threats of violence. Defendant separately feels it is important that he has been complicit since being first confronted by law enforcement officials over two years ago. He immediately admitted to being a felon and possessing firearms, and then he turned the three at issue in this case over to officers. Over a year later he made further inculpatory statements to authorities. Once he was finally arrested and formally charged, he waived his right to any bond hearing; he sat through a further debriefing with authorities, and then entered his guilty plea without filing any pretrial motions or otherwise exercising his right to go to trial. Taken as a whole, therefore, defendant submits that a below guidelines range sentence would be sufficient, but no more than necessary to address the sentencing factors under 18 U.S.C. § 3553(a).

### *Defendant's PSR Objection to Relevant Conduct Analysis*

Mr. Adams *"offense of conviction"*[1] - is for being in unlawful possession of certain firearms on May 5, 2013.

On October 20, 2014, Mr. Adams was interviewed by two ATF agents and a West Virginia State Police Trooper. During that interview, Mr. Adams explained how he could get firearms from Big Eagle Gun & Pawn, despite being a convicted felon. Basically, Mr. Adams had a life-long relationship with the shop's owner, who was also employing him at Highlands Memorial Cemetery near Logan. Mr. Adams separately explained that immediately following the Sandy Hook school shootings in Connecticut (December 14, 2012), there was a surge in demand for assault style rifles (fearing they would soon be banned). In order to meet this demand, the owner of Big Eagle Gun & Pawn employed Adams to seek out as many assault style rifles as he could find for purchase as private sales. This would have been from as early as late December 2012 into the first quarter of 2013. Adams estimated that he ultimately found 8 to 10 guns for Big Eagle owner Delmar Baker. For each gun found, Baker fronted the cash price to Adams to buy it, and once purchased - Adams turned each gun over to Baker. These were all private sales, not straw sales involving ATF Form 4473 , or  FFLs.  It was only after Adams had provided a number of guns to Baker that Baker then gave him the Rock River Arms LAR-8 7.62 mm rifle, later turned over to authorities by Adams on May 5, 2013. The gun was not given as consideration for any particular gun purchase or as a finder's fee. It was not given as expected compensation to Adams for doing a particular task. It was instead just "extra" on top of anything else Adams had done for Baker; in this context - the PSR's assertion

---

[1] *United States v. Griffith*, 2:14-cr-00118, Doc. 36, Mem. & Order, pp.10-12 (SDWV 6/24/2015).

that the LAR-8 was "payment" is not entirely accurate. As part of the same October 20, 2014 statement, Adams further explained that the other two firearms turned over by him on May 5, 2013, had been given to him by another employee of Big Eagle Gun & Pawn by Kevin Gore in exchange for prescription medications.

Based on the at least 8 firearms mentioned in his October 20, 2014 uncounseled, non-immunized statements to the two ATF agents and state trooper, the PSR has attributed 8 more guns to Mr. Adams as relevant conduct. *See* PSR ¶¶ 12-16. This takes the number of countable firearms up to 11 and adds 4 offense levels to defendant's original base offense level of 22. *See* PSR ¶¶ 16 & 21-22. Defendant has objected to the 4 offense level increase attributed to the October 20, 2014 statement to authorities as being improperly included as relevant conduct under USSG § 1B1.3.

Turning to USSG § 1B1.3(a)(1), regardless of the "fit" with anything else in Mr. Adams' statement - nothing disclosed on October 20, 2014, went to conduct that occurred <u>*during*</u> the commission of his offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. Mr. Adams' offense occurred on May 5, 2013. While Mr. Adams may have been given the LAR-8 because of conduct associated with other guns, that conduct was distinctly/ temporally separated from the offense conduct that occurred on May 5, 2013. So, the eight firearms were not possessed or handled or brokered during the commission of the May 5, 2013 conduct, they were not brokered "in preparation" for any unlawful firearm possession occurring on May 5, 2013, and they were not brokered in any way to conceal Mr. Adams' May 5, 2013 possession of the three guns.

Moving to USSG § 1.1B3(a)(2), the question becomes what specific additional offenses should be attributed to Mr. Adams. The PSR does not specify, instead only adding the 8 guns. The

specific additional conduct/offenses, however, would arguably go to groupability under USSG § 3D1.2(d). Separately, defendant contends that his gun possession on May 5, 2013, was not part of any "common scheme or plan or "same course of conduct" as anything the PSR attributes as relevant conduct. Granted, things Mr. Adams admitted to in his October 20, 2014 statement generally involved guns, but little he identified as various forms of conduct constituted a common scheme or plan that established a link to his May 5, 2013 firearm possession. Nothing Mr. Adams put on himself on October 20, 2014, shared a common purpose with his May 5, 2013 offense conduct, and nothing he said substantially connected his May 5, 2013 conduct to anything else he admitted.

Turning to USSG § 1B1.3(a)(3), what harm has been identified as arising from anything Mr. Adams expressed in his October 20, 2014 statement - beyond the fact what he described was unlawful? This is not a fraud case, or a case involving physical, emotional, or financial injury to any individual. Nothing Mr. Adams did as offense conduct or admitted on October 20, 2014 appears to have resulted in any measurable identifiable or discernable harm. As a consequence, the eight additional firearms should not be included as relevant conduct under § 1B1.3(a)(3) either.

In the absence of a legal basis to attribute additional firearms or conduct to Mr. Adams, his base offense level should not have been increased 4 levels to 26 in PSR ¶ 22. Mr. Adams' adjusted offense level in PSR ¶ 26 should be 22, such that his total offense level in PSR ¶ 30 should be 19. This would revise his final advisory guideline range to 37 to 46 months (TOL 19/Cat.III), in PSR ¶ 68.

For the above-stated reasons, defendant submits that a sentence of 24 to 30 months would be just as punitive (and thereby reflect the seriousness of Mr. Adams' offense), just as effectively

protect public safety, and just as effectively serve as a deterrent again future criminal conduct on the part of Mr. Adams or other third parties-as any sentence within the revised advisory guideline range.

Date: August 24, 2015.　　　　　　　　　　Respectfully submitted,

**GARY BRIAN ADAMS**

By Counsel

**CHRISTIAN M. CAPECE**
**FEDERAL PUBLIC DEFENDER**

**s/ Lex A. Coleman**
Lex A. Coleman, WV Bar No. 10484
Assistant Federal Public Defender
Counsel for Defendant
United States Courthouse, Room 3400
300 Virginia Street East
Charleston, West Virginia 25301
Telephone: (304) 347-3350
Facsimile:  (304) 347-3356
E-mail: lex_coleman@fd.org

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.  Criminal No. 2:15-cr-00059

**GARY BRIAN ADAMS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **DEFENDANT'S SENTENCING MEMORANDUM & MOTION FOR VARIANCE SENTENCE** has been electronically filed with the Clerk of Court this date using the CM/ECF system and served upon opposing counsel as follows

| | |
|---|---|
| **VIA CM/ECF:** | Steven I. Loew<br>Assistant United States Attorney<br>United States Courthouse, Room 4000<br>300 Virginia Street East<br>Charleston, West Virginia 25301<br>Email: steven.loew2@usdoj.gov |
| **DATE**: August 24, 2015 | s/ Lex A. Coleman<br>Lex A. Coleman, WV Bar No. 10484<br>Assistant Federal Public Defender<br>Counsel for Defendant<br>United States Courthouse, Room 3400<br>300 Virginia Street East<br>Charleston, West Virginia 25301<br>Telephone: (304) 347-3350<br>Facsimile: (304) 347-3356<br>E-mail: lex_coleman@fd.org |