IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

```
_____x
                                :
UNITED STATES OF AMERICA,       :        Criminal Action
                                :
              Plaintiff,         :        No.  2:15-cr-00059
                                :
v.                              :
                                :        Date:  August 27, 2015
GARY BRIAN ADAMS,               :
                                :
              Defendant.        :
_____x
```

TRANSCRIPT OF SENTENCING HEARING HELD
BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Government:          AUSA JENNIFER R. HERRALD
                            U.S. Attorney's Office
                            P.O. Box 1713
                            Charleston, WV  25326-1713


For the Defendant:          AFPD LEX A. COLEMAN
                            Federal Public Defender's Office
                            Room 3400
                            300 Virginia Street East
                            Charleston, WV 25301


Probation Officer:          Matthew Lambert


Court Reporter:             Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1      PROCEEDINGS had before The Honorable Thomas E. Johnston,

2  Judge, United States District Court, Southern District of West

3  Virginia, in Charleston, West Virginia, on August 27, 2015, at

4  2:01 p.m., as follows:

5      COURTROOM DEPUTY CLERK:  The matter before the Court is

6  the United States of America versus Gary Adams, criminal action

7  number 2:15-cr-00059, scheduled for sentencing.

8      THE COURT:  Good afternoon.  Will counsel please note

9  their appearances?

10     MS. HERRALD:  Jennifer Herrald for the United States.

11     MR. COLEMAN:  Lex Coleman on behalf of Mr. Adams, Your

12  Honor, seated in the courtroom to my left.

13     THE COURT:  Good afternoon.

14  Mr. Adams, will you please stand, and I will ask the deputy

15  clerk to administer an oath to you at this time.

16     COURTROOM DEPUTY CLERK:  Please raise your right hand.

17      **GARY BRIAN ADAMS, DEFENDANT, SWORN**

18     THE COURT:  You may be seeded.

19  Mr. Adams, do you understand that you are now under oath and

20  you must tell the truth and, if you testify falsely, you may face

21  prosecution for perjury or for making a false statement?

22     THE DEFENDANT:  Yes, Your Honor.

23     THE COURT:  All right.  Throughout the course of this

24  hearing, if there's anything that occurs that you don't

25  understand, I want you to feel free to speak up and seek

clarification.

Also, if at any time you need to confer with your attorney, I'll be pleased to pause the proceedings to allow you to do so. Do you understand all that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Have -- Mr. Coleman, have you received and read and reviewed with your client a copy of the most recent edition of the Presentence Report?

MR. COLEMAN: Yes, Your Honor.

THE COURT: And, Mr. Adams, have you received and read and reviewed with your counsel a copy of the most recent edition of the Presentence Report?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has the Government received and reviewed the most recent edition of the Presentence Report?

MS. HERRALD: Yes, Your Honor.

THE COURT: All right. Come to think of it, Mr. Lambert, I actually haven't looked at the most recent edition, although I think I sort of provoked it. It changes the guideline calculation from a Base Offense Level of 22 to 20; is that correct?

PROBATION OFFICER LAMBERT: Yes, sir, Your Honor.

THE COURT: And that's really the only change, right?

PROBATION OFFICER LAMBERT: Yes, sir, Your Honor.

THE COURT: All right. Very well.

1        Is there any objection to that change?

2            MS. HERRALD:  No, Your Honor.

3            MR. COLEMAN:  No, Your Honor.

4            THE COURT:  All right.  That takes one item off the

5    agenda.

6        The other issue is the -- is the objection that the

7    defendant has asserted with regard to the additional firearms

8    that came from the statement that was given sometime after the

9    offense of conviction.

10       By the way, now that I think about it, do you have that

11   statement?  Do you have the statement, the one I called for?

12       Excuse me just a second.

13       (Pause.)

14           THE COURT:  As a part of my preparation for this

15   hearing, I asked the probation officer for a copy of the ATF

16   Report of the defendant's interview, I believe, on October 20th,

17   2014, and I have read that, and I'm going to make it a part of

18   the record for this proceeding for that reason.

19       So, where do we stand on that objection?

20           MR. COLEMAN:  I think I addressed the relevant conduct

21   analysis in my sentencing memo.  I did not discuss *Griggs* --

22   which Mr. Lambert talked about in the addendum, which is an

23   unreported 2007 case.  It was analyzed under clear error analysis

24   and under Subsection 2 of the relevant conduct guideline and, in

25   that case, he possessed 70 other guns four months before, I

guess.  He had a Marlin .22 rifle.  The assertion I got was that
-- or what I got from the case, I think the 70 guns were actually
found in his home.

I think we're okay on the first prong and okay in the sense,
my argument stands temporally that the eight guns, eight
additional guns, were not during or in preparation for, or in
hiding the three he was found with on May 3rd, 2013.

THE COURT:  Well, I understand your argument, Mr.
Coleman.  Let me just cut to the chase here.

MR. COLEMAN:  Yes, sir.

THE COURT:  *Griggs* goes to the course of conduct or --

MR. COLEMAN:  Right.

THE COURT:  I want to focus on another aspect of it and
I believe you raised this, and that is whether or not there is
adequate evidence to support these other offenses; specifically,
the possession of these other eight guns.  *Griggs* doesn't
actually address that, correct?

MR. COLEMAN:  No, sir, it does not.

THE COURT:  All right.  Let me see what the Government
has to say about that.

MS. HERRALD:  About the -- whether or not the defendant
actually possessed those firearms or --

THE COURT:  No, no, no, no.  I'm talking about the
(a)(2) analysis.  The defendant is arguing, as I read the
objections, that there's inadequate evidence, that these were

1    actually firearms, or that they were -- they passed through

2    interstate commerce.

3        Now, as you probably know by now, because the genesis of all

4    of this was the *Spurlock* case that you were involved in and, I

5    have to tell you, I feel a little bit bad about how that unfolded

6    and, if you wanted to brief this legal point, at this point, I

7    would allow you to do so, but after *Spurlock*, my approach to

8    these 1B1.3(a)(2) cases, and this is an (a)(2) issue, as I see

9    it, is that the other conduct, according to the guideline, must

10   constitute an offense and, as I read that, and, actually, as a

11   practical matter, and this is my approach to it, although -- and

12   I -- you know, this is the first time it's been brought up front

13   and center, but my approach to it is that, under (a)(2), the

14   other conduct that's being considered has to be an offense.  I

15   think that's pretty clear from the guideline and, in my view, the

16   elements of that offense must be in the record.

17       And that -- just to give a little bit of history, after the

18   *Spurlock* case was the subject of some debate between myself and

19   the Probation Office that ultimately led us to the Sentencing

20   Commission that ultimately agreed with my perspective on that

21   and, as a practical matter, my perspective on that is, how do you

22   know it's an offense that might be grouped with the instant

23   offense if you don't have the elements satisfied, and so you were

24   -- you were present at the beginning of that whole discussion and

25   now here, a few months later, my thoughts on it have gelled

considerably and it's encouraged, some might say enabled me, that the Sentencing Commission has agreed with me on that.

So, with that in mind -- now, if the Government wants to brief that point, I'm happy to do that. I'm not -- you know, I'm -- I certainly, even though I've sort of reached that conclusion, it's possible you could talk me out of it, and I certainly would give you that opportunity, if you want it. That's the legal point. So, my question is, do you want that?

MS. HERRALD: On the legal issue in this -- I'm going to jump ahead a little bit here just to cut to the final point that the Government is going to make, and that is that the United States believes that those eight firearms are relevant conduct and are legitimately considered as relevant conduct under the sentencing guidelines in this case.

However, given the context in which those guns came to light, specifically, the statement that took place later with ATF, these guns were guns that the United States would have had no knowledge of but for the defendant making those claims during that statement. That statement was not pursuant to a proffer. It was not pursuant to a plea agreement, but in all other aspects, it was essentially the defendant attempting to cooperate and give information to the Government.

Given those particular circumstances, the United States would not object to those guns in this particular case not being considered for purposes of an enhancement. So, essentially,

we're not conceding that they are not relevant conduct, but we're
also not pursuing the enhancement based on those firearms given
the context of how they came to light.

THE COURT:  Well, I think that's a useful sidestep of
the issue, Ms. Herrald.

Now, and I would find under my analysis that there is
insufficient reliable evidence to count those under, I think it's
2K2.1(b)(1) for the four-level enhancement.

Now, this takes me -- so, to that extent, based on that and
the Government's comments, I will sustain the objection to the
extent of the four-level enhancement.

However, let me go back to Mr. Coleman now.  This isn't
mentioned in the briefing, but all you have to have for a
two-level enhancement is three guns.  We got that charged in the
indictment and we clearly have a basis for that.  So, you don't
-- you don't object to the two-level enhancement?

MR. COLEMAN:  I have no grounds in good faith to object
to it.

THE COURT:  Okay.  Well, fair enough.

Well, based on all that then, I am going to sustain the
defendant's objection to the four-level enhancement, but will
apply the two-level enhancement.

Ms. Herrald?

MS. HERRALD:  I'm actually just seeking some
clarification, not raising any objections to that, but you

mentioned that it was both your determination that there was

insufficient evidence and the Government's concession that they

were not pursuing that enhancement.  Just for clarification, or

for going forward, is it the fact that the guns were -- there was

not an interstate nexus done on the firearms because they were

not in the possession of the United States and your concern is

that that element was not met?

THE COURT:  Well, here -- yeah.  If you want the

clarification, I'll give it to you.  I have a feeling we'll,

maybe not in this case, but in some case in the future, we might

be addressing this with more particularity.

My analysis of 1B1.3(a)(2) is that -- and the language is

set forth in the guideline -- that there are several pieces that

have to be fulfilled in order for other offenses to be counted as

relevant conduct.

First of all, the other offenses, and this is really a

starting point for me.  It's not necessarily anaclitically the

best starting point, but it actually -- let's put it this way.

It wasn't necessarily the starting point I had envisioned, but I

had a conversation with Alex Alvarez, the Chief Deputy Probation

Officer.  Actually, I had several conversations with him about

this, and he actually suggested this as a starting point because

it's pretty simple, it can lead to pretty simple answers, and

that is that the offense that's under consideration to be

relevant conduct and the instant offense have to be such that

1    they would be grouped under the same guideline that requires

2    grouping under 3D1.2(d).  That's the first part.

3        In this case, we're talking about another offense that is

4    potentially felon in possession of a firearm.  Both that and the

5    instant offense fall under 2K2.1.  Grouping is required under

6    3D1.2(d) for that.  So, that part is met.

7        Then, there's two other parts, one -- to me.  One of them is

8    that the other offense has to be either a part of the common

9    scheme or plan or same course of conduct.  I'm not actually

10   getting to that in this case, but the -- that's clearly a part of

11   it.  It's also covered in more detail under, I believe, it's

12   Application Note 9 of 1B1.3 of the guidelines.

13       However, part of the analysis to me is, if you're talking

14   about another offense to be included as relevant conduct under

15   1(b)1.3(a)(2), the question is, is there another offense, and my

16   view is that there's no way to know if there's another offense

17   unless we have the elements of it.

18       Now, obviously, the burden, the standard of proof in a

19   guideline context is preponderance, not beyond a reasonable

20   doubt, but with that caveat, I believe we have to have the same

21   -- you have to fulfill the same elements -- for those offenses in

22   the context of this case, you would have to fulfill the same set

23   of elements for those offenses that you do for the offense of

24   conviction.

25       And, what I find looking here is that we have -- we have no

evidence of any real information about these guns from the statement other than the defendant's reference to them as "assault rifles." We don't know where they were made. There's -- there's no -- obviously, not interstate nexus has been done on it, and we don't have reliable information for purposes of this analysis that they were -- to fit the definition of a firearm. I mean, we all know they may very well have, but I'm not going -- we would not sustain a conviction based on that and, to me, not because of the difference in the standard of proof, but just in the -- in terms of what proof we expect for a firearms case.

They're doing a little bit of electrical work in the building right now, so we might see more of those flickers.

So, that's the basis on which -- that's how I would analyze this or, from here on out, any other case in terms of relevant conduct under (a)(2), and I'm looking at these things really carefully now because I have found -- I've found some since I've sort of gotten tuned into this where mistakes were made.

And so, not only -- I know that you all look at these, the probation officers look at them very closely, my law clerks look at them closely, I look at it closely personally now, too, in every sentencing because I want to make sure that I get this guideline calculation correct.

So, that's how I'm looking at it. I understand this might not be the case where we test this and I think I've convinced the Probation Office that I'm correct on this analysis. That doesn't

1    mean I've convinced everybody.

2         It certainly informs my expectations for defense counsel,

3    and that's been one of the things, and this is not a comment on

4    you, Mr. Coleman, even though I'm the one who caught the thing

5    about the magazine but, generally speaking, the Public Defender's

6    Office is pretty thorough, but I've had some real problems with

7    other defense counsel and I'm frankly -- again, excluding present

8    company, I'm pretty aggravated with defense counsel for not

9    looking at this stuff as closely as I am, but that doesn't mean

10   that I wouldn't welcome -- welcome may be a strong term -- I

11   wouldn't be willing to consider a case in which a party,

12   presumably the Government, would argue that I've got this wrong.

13        I certainly would consider that and, not only would I be --

14   obviously be willing to consider that, I'd be willing to see what

15   the Court of Appeals has to say about it, but where I fall down

16   on this (a)(2) thing is very simple.  How are you going to know

17   there's another offense if you don't know that the elements of

18   that offense exists?  There's no logical way to do that.

19        The only other way to do it is to assume it, and I don't

20   think that criminal proceedings should be based on assumptions.

21   So, that's -- that's my thinking on this, and that, along with

22   the Government's indication that they don't object to not

23   applying the enhancement.  The enhancement is the basis of my

24   ruling in this particular case.  Any other questions?

25             MS. HERRALD:  No, Your Honor, thank you.

1          THE COURT:  All right.  Very well.

2      I will adopt the Presentence Report and addendum as written,

3  with the exception of the one change, and I will ask an addendum

4  be prepared to reflect that change.

5      I would note that I have received the sentencing memorandum

6  of the defendant.

7      On May 21st, 2015, the defendant appeared before this Court

8  and entered a plea of guilty to the indictment which charges him

9  with being a felon in possession of -- actually, three firearms,

10  in violation of 18 U. S. C. Section 922(g)(1) and 924(a)(2).

11      I will now adjudge the defendant guilty of that crime and

12  accept plea agreement that was previously filed.

13      I am now ready to give my tentative findings as to the

14  applicable guidelines.  First, is there a motion for the third

15  level for acceptance of responsibility?

16          MS. HERRALD:  There is a motion.

17          THE COURT:  That motion will be granted.

18      Therefore, I find a Base Offense Level of 20; plus 2 for

19  three firearms; minus 3 for acceptance of responsibility, for a

20  Total Offense Level of 19; a criminal history category of III

21  based on four criminal history points, yielding an imprisonment

22  range of 37 to 46 months; 3 years of supervised release --

23  actually, 1 to 3 years of supervised release; a fine range of

24  $6,000.00 to $60,000.00; and a mandatory special assessment of

25  $100.00.

1      Are there any legal objections to my tentative findings as

2  to the applicable guidelines?

3          MS. HERRALD:  No, Your Honor.

4          MR. COLEMAN:  No, Your Honor, thank you.

5          THE COURT:  All right.  Mr. Adams, at this time, the

6  Federal Rules of Criminal Procedure give you the right to make

7  any statement that you would like to make, although you're not

8  obligated to make any statement.  However, if you do choose to

9  make a statement, I would ask that you stand to do so.

10         THE DEFENDANT:  I would just like to say that I'm sorry

11  for what I've done and the pain and suffering I've caused my

12  family and I want to apologize to the Court for what I've done.

13         THE COURT:  Thank you, sir.  You may be seated.

14    Mr. Coleman, anything else on behalf of the defendant before

15  I impose sentence?

16         MR. COLEMAN:  Again, the thing about this case that, as

17  defense counsel, frustrated me, but also, as defense counsel,

18  impressed me was, as soon as he was confronted, he was forthright

19  and conversant with the state troopers.  He turned over his guns.

20  They followed him in the house, but he retrieved them and gave

21  them to them without incident.

22    He wasn't arrested at the time.  In fact, this other

23  statement was obtained over a year later while he was still at

24  large until he was indicted here and, to my knowledge, there's

25  been no further gun issue or gun charge involving him since this

happened in May of 2013.

I look at the age of it. I know he has the criminal history that's accounted for in his criminal history score. I still think you can easily give him a guideline sentence of 37 months, which would certainly point out the seriousness of what he did, it would protect the public from him, and it would serve as a deterrent for any future criminal conduct on his part or anyone similarly situated. He has led an uneventful life. I've gone through his personal history in my sentencing memo.

Again, looking at it proportionately, I've heard you and every other judge in this district point out this side concern about convicted felons having guns. To his credit, what he initially had were then possessed in the place where he was residing, and then, what we admitted to a year later involved the sale to a pawnshop, not using them to commit an act of violence or to use in a way we're hearing about on the news just about every other day.

So, his guideline range is what the Commission recommends based on no breaks, based on what he's done without leaving something out, both in terms of his criminal history and his offense conduct.

Just punishment in this, I recommended, I think, 24 to 36 months, or 30 months. I shouldn't write sentencing memos with a fever, but I'm looking at it, again, proportionately and this guideline covers a broad spectrum of conduct involving firearms

and I am not making light of anything Mr. Adams has done, but I will submit, taken in the worst light, his conduct is more toward the middle to the low spectrum on that guideline and, again, this is still a status offense. So, you know all of that.

I've asked you -- I've made points in my memo to consider a below guideline sentence but, if not, at least one certainly at the bottom of the guideline range.

I mean, the one thing that my client now has going for him, despite the deaths in his family and how fragmented it's gotten over in Logan, the two women sitting here, Cheryl Vance is who he's had the relationship with since 2009, and then his mother has come all way from South Carolina on her own initiative to be supportive of her son. So, he's not just down 119 by himself in Chapmanville running amuck without some family support.

So, there's a light at the other end of this when he gets through serving his term, that with the proper support and, certainly, the guidance and support of the probation office, that we can certainly minimize and possibly eliminate the risk of him coming back before you again, I think he can do that with 37 months and even as low down as two years.

THE COURT: Ms. Herrald?

MS. HERRALD: Thank you, Your Honor. The United States believes that a guideline sentence in this case is appropriate. The defendant was in possession of three different firearms, one of which was a semiautomatic that, while being capable of holding

a high capacity magazine, was not actually attached to a high

capacity magazine, but that is a very serious firearm for a felon

to be in possession of, and that is one of the major concerns

that is addressed by the felon in possession statute, is

individuals with prior felonies, particularly drug felonies such

as the defendant, in possession of particularly dangerous

firearms.

And the United States indicated it was not going to pursue

the enhancement based on his statement, but the statement that he

made about acquiring the other handguns -- or the firearms does

exist and the particular nature of that is combined with his own

LAR-8 rifle is concerning, dealing with assault and semiautomatic

assault rifles.

The United States believes that his -- that his conduct in

this case, having those three firearms, is very serious and it

does warrant a guideline sentence.  The guideline is appropriate

for this case and the United States would ask that he receive a

sentence within the guideline range.

THE COURT:  Thank you, Ms. Herrald.

All right.  After consideration of the advisory guidelines

and the other applicable factors under 18 U. S. C. Section

3553(a), I am now ready to impose sentence.

Mr. Adams, you have a felony drug conviction.  Actually, I

think it's two from the same time.  Also, this statement

indicates that that was not your only involvement with drugs and

that you have had continuing involvement with drugs since then.

Felons and guns don't mix. The Government and your counsel indicated that that's a statement I've made before and it's the policy behind the statute of which you've been convicted. Convicted felons are more likely to get in trouble with guns and, therefore, that's the reason we have that statute, and that concern is even greater when you add -- when you mix in drugs.

Drugs and guns are not a good mixture. They definitely, in combination, bring a greater risk of violence. The drug business can be a violent business and drugs -- and guns certainly play into that.

And you didn't just have one. You had three with regard to the offense of conviction. So, this is a serious offense that requires a just punishment.

With regard to your prior felony, the probation officer told me you ended up doing a year and five days, or something to that effect on that one, or somewhere just a little over a year, and it appears that that did not get the message through to you to not engage in criminal conduct. So, this sentence needs to deter you and other felons from possessing guns.

Now, I do note that you appear to have not engaged in any violence with guns and that you were, in general, fairly cooperative with law enforcement in the course of this case and, for those reasons, I conclude that a sentence at the low end of the guideline range is appropriate.

1  Based on all of these factors then, it is the judgment of

2  this Court that you be committed to the custody of the Federal

3  Bureau of Prisons for a period of 37 months.

4  Upon release from prison, you shall be placed on supervised

5  release for a term of three years.  Within 72 hours of your

6  release from custody, you shall report in person to the U. S.

7  Probation Office in the district to which you are released.

8  While on supervised release, you must not commit another

9  federal, state or local crime; you must not possess a firearm or

10  other dangerous weapon; and you must not unlawfully possess a

11  controlled substance.

12  You must also comply with the standard terms and conditions

13  of supervised release as recommended by the U. S. Sentencing

14  Commission and as adopted by this Court, including the standard

15  condition that you shall participate in a program of testing,

16  counseling and treatment for drug and alcohol abuse as directed

17  by your probation officer.  You must also abide by the special

18  conditions of supervised release as set forth in the local rules

19  of this Court.

20  The Court does not find that you pose a low risk of future

21  substance abuse and the Court will order that you submit to one

22  drug test within 15 days of release from custody and at least two

23  periodic drug tests thereafter as a condition of supervised

24  release.

25  I am not going to impose a fine in this case.  I believe it

would create unwarranted disparities, that -- I know that you have a child and, although I believe there's no child support order, at least morally, your -- you have some obligation to that child and, therefore, I believe that your resources are better directed to the support of your child.  I also note that your resources are limited, so no fine will be imposed.

A mandatory special assessment of $100.00 is required.  It will be imposed and made due immediately, but it may be paid through the Inmate Financial Responsibility Program at the rate of $25.00 per quarter.  If there's a balance of the special assessment at the time that you are released from custody, it will be a special condition of your supervised release to pay that balance and I will allow you to pay it at the rate of $50.00 per month beginning 30 days from your release from custody until it is paid in full.

You may be seated.

Mr. Coleman, are there any recommendations that you or your client would like for me to make to the Bureau of Prisons?

MR. COLEMAN:  I think he would like to be as close to home as possible, Your Honor, and I guess we'll go ahead and make the recommendation for residential drug addiction.  I don't know that he'll qualify for it with his conviction, but it won't hurt to do it.

(Counsel and defendant confer.)

MR. COLEMAN:  Okay.  That's all I have, Your Honor.

1          THE COURT:  All right.  I will recommend, first of all,

2     that he receive credit for time served as appropriately

3     calculated by the Bureau of Prisons.

4          MR. COLEMAN:  Yes, sir.

5          THE COURT:  That he be evaluated for and placed in any

6     and all appropriate drug treatment programs, including the RDAP

7     Program, and that he be designated to an appropriate facility as

8     close to his home in Logan County, as possible.

9        I note that the defendant is currently in custody and will

10    be remanded to the custody of the marshals for further service of

11    his sentence at the conclusion of this hearing.

12       Mr. Adams, I note that you have the right to appeal the

13    judgment of this Court.  Any Notice of Appeal must be filed with

14    the Clerk not more than 14 days from the date of the entry of the

15    judgment order.

16       If you desire counsel on appeal and you are not able to

17    retain counsel, the appropriate Court will review a financial

18    affidavit filed by you to determine whether or not to appoint

19    counsel.

20       Do you understand your right to appeal and the 14-day filing

21    requirement?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  All right.  I will place the Presentence

24    Report under seal subject to counsel's right to unseal as

25    necessary for appeal.

1          Any other matters we need to take up in this case?

2               MS. HERRALD:  Very briefly, Your Honor.  You had

3     mentioned that the ATF Report you were going to make a part of

4     the record.

5               THE COURT:  Yes.

6               MS. HERRALD:  The Government would ask that that be

7     placed under seal based upon the nature and subject of that

8     report and various ongoing investigations with ATF.

9               THE COURT:  Is there any objection to that?

10              MR. COLEMAN:  No, sir.

11              THE COURT:  All right.  I will -- I think that's --

12    that point is well taken, so I will place that under seal, but as

13    part of the record in this proceeding.

14              MS. HERRALD:  Thank you, Your Honor.

15              THE COURT:  Anything else we need to take up today?

16              MS. HERRALD:  No, Your Honor.

17              THE COURT:  Mr. Coleman?

18              MR. COLEMAN:  It's along the same line.  I'm thinking

19    about the minute entry.

20              THE COURT:  The what?

21              MR. COLEMAN:  The minute entry, as far as the exhibit

22    you're referencing with the ATF Report.  If that's all that's

23    referred to, that doesn't present any danger, as far as the

24    contents.  So, I'll quit making a face.  I'm sorry.

25              THE COURT:  Well, you were hesitating and making a

1    face.

2         We can -- I'm sure my courtroom deputy can -- we're -- we

3    are conscious of these types of issues and my courtroom deputy

4    can tailor her minute entry accordingly.

5              MR. COLEMAN:  Thank you.

6              THE COURT:  All right.  Thank you.

7         (Proceedings concluded at 2:32 a.m., August 27, 2015.)

8

9    CERTIFICATION:

10        I, Ayme A. Cochran, Official Court Reporter, certify that

11   the foregoing is a correct transcript from the record of

12   proceedings in the matter of United States of America, Plaintiff

13   v. Gary Brian Adams, Defendant, Criminal Action No.

14   2:15-cr-00059, as reported on August 27, 2015.

15

16   s/Ayme A. Cochran, RMR, CRR                September 28, 2015

17   Ayme A. Cochran, RMR, CRR                       DATE

18

19

20

21

22

23

24

25